# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JOSHUA BEACHAM,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT A. STEWARD,<br>in his official and individual capacities<br><br>JOSEPH D. TORCZON,<br>in his official and individual capacities<br><br>NANCY WOLF,<br>in her individual capacity,<br><br>ASHLI CARRAFA, LPN,<br>in her individual capacity,<br><br>DETENTION OFFICER NYRENE,<br>in his individual capacity,<br><br>WELLPATH, LLC, f/k/a Correct Care Solutions, LLC, in its official and individual capacities,<br><br>Defendants. | Civil Action No. 22-CV-222<br><br>**Initial Expert Report of<br>Sean T. Stewart** |

## Part I
## Introduction

I was retained by the **Wyoming Attorney General's Office** to serve as both a consulting expert and expert witness for the case of **Joshua Beacham v. Scott A. Steward, et al**. The following is my report, prepared pursuant to Federal Rule Civil Procedure 26 (a) (2).

In preparation to assist as an expert witness in this case:

1. I carefully reviewed and considered the file documents provided by the **Wyoming Attorney General's Office**. Additionally, I applied my knowledge, experience and training in the review and final analysis of my expert opinion:

2. Additionally, I applied over thirty years as a correctional professional and corrections-related experience, including, but not limited to my extensive career in the profession of corrections and based on my professional qualifications as listed in Part VIII.

Stewart IXR Joshua Beacham v. Scott A. Steward, et al.     Page 1

**EXHIBIT A**

## Part II
## Opening Opinions and a Foundation and Context for the Review of this Case

As a correctional professional, with over 30 years of experience in corrections and 14 years as a senior commander, with the Pima County Sheriff's Department, I had to investigate and provide critique of incidents. I was required to review incidents regarding staff use of force, staff intervention, actions taken and/or failure to act. Since the early 1990's, I have in various capacities been involved in the operation, management, auditing and in providing training and technical assistance to my facility and others.

To begin with, let it be stated that I am not qualified to offer opinions regarding the medical care, evaluation, diagnosis or treatment of inmates. I lack the medical expertise, qualifications and license to second-guess the medical professionals assigned that responsibility. Thus, I offer no opinions – critical or supportive – regarding the decisions or actions of **Wellpath, LLC,** or their **medical staff** on site.

In formulating my opinions regarding **Plaintiff**'s allegations, I will consider:

- The information known, if any, regarding **Joshua Beacham**'s medical issues during his incarceration.

- What, if any, actions were required to be taken by **Sheriff Scott Steward, Lieutenant Joe Torczon** and **Officer Dave Nyreen** with respect to the medical care provided to **Joshua Beacham.**

- Whether the policies and procedures of the **Park County Detention Center** were reasonable with respect to the provision of medical care to inmates.

Without attempting to define the legal standard in Wyoming for determining negligence in the instant case, I will consider if **Sheriff Scott Steward, Lieutenant Joe Torczon** and **Officer Dave Nyreen** caused harm to **Joshua Beacham**. I will consider and opine whether the actions of **Sheriff Scott Steward, Lieutenant Joe Torczon** and **Officer Dave Nyreen** constituted deliberate indifference to serious medical needs or fell below the reasonable standard of care for correctional staff under the circumstances. Additionally, I will consider and opine regarding whether **Sheriff Scott Steward, Lieutenant Joe Torczon** and **Officer Dave Nyreen** disregarded any medical requests, treatments or orders given by the onsite medical staff **(Wellpath, LLC)** and whether **Sheriff Scott Steward, Lieutenant Joe Torczon** and **Officer Dave Nyreen** interfered with **Joshua Beacham**'s medical care.

It should be noted that the **Plaintiff**'s **1st Amended Complaint**[1] is rife with conclusory allegations. **Plaintiff** offers only a conclusory assertion that **Steward, Torczon** and **Detention Officer Nyreen** knew of and made a conscious decision to ignore **Plaintiff**'s complaints of alleged severe pain and requests for medical attention.[2] The Complaint is silent, as to how or in what respect **Steward, Torczon** and **Detention Officer Nyreen** knew of and made a conscious decision to ignore **Plaintiff**'s complaints. **Plaintiff** offers only a conclusory assertion that **Steward**'s, **Torczon**'s and **Detention Officer Nyreen**'s actions and/or failures to act were willful, wanton, reckless, and in blatant disregard of

---

[1] #23 Pltf 1st Amd Complaint 01.23.23.

[2] #23 Pltf 1st Amd Complaint 01.23.23 Page 6 at 45,46 and 47.

Stewart IXR Joshua Beacham v. Scott A. Steward, et al.     Page 2

**Plaintiff**'s rights.[3] The Complaint is silent, as to how or in what respect **Steward**'s, **Torczon**'s and **Detention Officer Nyreen**'s actions and/or failures to act were willful, wanton, reckless, and in blatant disregard of **Plaintiff**'s rights.

**Plaintiff** offers only a conclusory assertion that **Steward** and **Torczon** had a policy, custom or practice of denying medical care to unsentenced inmates in the position of **Plaintiff**.[4] The Complaint is silent, as to how or in what respect **Steward** and **Torczon** had a policy, custom or practice of denying medical care to unsentenced inmates in the position of **Plaintiff**. The medical records demonstrate that **Plaintiff** received medical care prior to being sentenced.

It must be noted that **Joshua Beacham** requested a Bond Modification so he could be released for purposes of medical treatment for his hernia. and the court (**Judge Simpson**) granted the request.[5] **Joshua Beacham** was released on January 15, 2020. However, it appears **Joshua Beacham** *did not* get the medical attention for which he requested a Bond Modification. **Joshua Beacham** was booked back into the **Park County Detention Center** on February 3, 2020, for Domestic Battery.[6] There is no indication **Joshua Beacham** sought or obtained medical care while he was free on bond. During this stay **Park County Detention Center Medical staff (Wellpath, LLC)** sent **Joshua Beacham** to the hospital, **West Park District cba Cody Regional Health** for orthopedic surgery on his hand. The surgery took place on February 6, 2020.[7] **Joshua Beacham** was released from the **Park County Detention Center** on March 5, 2020. **Beacham** was again arrested and booked into the **Park County Detention Center** on May 11, 2020. There is no indication Beacham sought or obtained medical care in the interim.

The **Park County Detention Center** provided medical care to inmates, including **Joshua Beacham**, by contracting with **Wellpath, LLC**.[8] **Joshua Beacham** was under the medical care of **Wellpath, LLC**, and was primarily treated by **Ashli Carrafa, LPN** and **Nancy Wolf, NP**. Diagnosing and treating inmates in the **Park County Detention Center** was clearly the responsibility of the medical professionals assigned by **Wellpath, LLC** and not of **Sheriff Scott Steward, Lieutenant Joe Torczon** and **Officer Dave Nyreen**. The correctional officials had neither the responsibility nor the expertise to second-guess or interfere with the medical diagnosis and treatment being provided by **Wellpath** at the **Park County Detention Center**. Indeed, correctional officials should not second-guess or interfere with medical diagnosis and treatment provided to inmates.

Based on the review of information received to date, I have concluded the following. **Sheriff Scott Steward** and **Lieutenant Joe Torczon** were not deliberately indifferent to serious medical needs and did not breach the standard of care with respect to **Joshua Beacham** Park County contracted with a nationally recognized private medical provider, **Wellpath, LLC,** to provide medical services.[9]

There is no evidence in the information received to date to conclude **Sheriff Scott Steward, Lieutenant Joe Torczon, Officer Dave Nyreen** and/or any **Park County Detention Center Detention Deputy** delayed or interfered with **Joshua Beacham**'s access to medical care while he was incarcerated.

---

[3] #23 Pltf 1st Amd Complaint 01.23.23 Page 7 at 57, 58 and 59.

[4] #23 Pltf 1st Amd Complaint 01.23.23 Page 8 at 68 and 69.

[5] CRIM-0001-10 JAN 2020 Stipulated Order Bond Mod.

[6] Beacham Booking #17833 At page 2 (No Bates # assigned).

[7] JJB-CHART-0001-144 12.29.18-04.02.21 Wellpath (Bates # JJB-CHART-0109 thru 0117).

[8] AGREEMENT-HCS-0001-31 (Bates # Agreement-HCS-000001 thru 000031).

[9] AGREEMENT-HCS-0001-31 (Bates # Agreement-HCS-000001 thru 000031).

There is no evidence in the information received to date to conclude **Sheriff Scott Steward, Lieutenant Joe Torczon, Officer Dave Nyreen** and/or any **Park County Detention Center Detention Deputy** acted in an "Indifferent" or "Negligent" manner regarding **Joshua Beacham**; as claimed by **Plaintiff**. The record is clear. Medical evaluation, diagnosis and treatment was within the purview of Wellpath and its professional staff.

This assessment is made with reasonable and professional certainty, based on my extensive career in the profession of corrections and based on my professional qualifications as listed in Part VIII.

See section V for my opinions and justification pertaining to my opening opinions.

## Part III
### Documents Reviewed/Facts Data Considered as Basis for Opinions

**Materials Received:**

1. Pleadings:
   a. #23 Pltf 1st Amd Complaint 01.23.23
   b. #26 Off Defs Answer to 1st Amd Complaint 02.03.23
   c. #28 Indiv Defs Answer to Pltfs Amended Complaint 02.06.23
   d. #30 Defs Wellpath, Carrafa, Wolf's Answer to Pltf 1st Amended Complaint 02.14.23
2. Beacham Stipulated Protective Order
3. Discovery:
   a. Indiv Defs Initial Disclosures
   b. Pltf 1st Supp. Initial Disclosure
   c. Pltf Initial Disclosures 04.10.23
   d. Pltf Rsp to IC Def'ts 1st ROGS
   e. Pltf Rsp to Wellpath Defs 1st RFP
   f. Pltf Rsp to Wellpath Defs 1st ROGs
   g. Pltfs Response to IC Def'ts 1st RFPs (2)
   h. Wellpath Defs Initial Disclosures
4. Documents Produced by Infiv Capacity (none):
   a. Indiv Defs Initial Disclosures
5. Documents Produced by Official Capacity:
   a. OC 000001-000003 - 8.01 Accepting Medications into Facility
   b. OC 000004 - 8.02 Confidentiality
   c. OC 000005-000006 - 8.03 Dental - Optometrist Care
   d. OC 000007 - 8.04 Detoxification
   e. OC 000008-000009 - 8.05 Emergency Medical Care
   f. OC 000010-000011 - 8.06 First Aid Kits
   g. OC 000012-000013 - 8.07 Hospitalizations
   h. OC 000014-000015 - 8.08 Infectious Disease
   i. OC 000016-000018 - 8.09 Storage of Medicines
   j. OC 000019-000022 - 8.10 Non-Emergent Care
   k. OC 000023-000024 - 8.11 Payment for Medical Services
   l. OC 000025 - 8.12 Refusal of Treatment
   m. OC 000026-000029 - 8.13 Suicide Prevention
   n. OC 000030-000032 - 8.14 Urine Analysis
   o. OC 000033 - 8.15 Weights
6. Documents Produced by Plf:

         a. Beacham 1-3
         b. Documents for Production
         c. Pltf Initial Disclosures 04.10.23
7. Documents Produced by Wellpath:
         a. AGREEMENT-HCS-0001-31
         b. BOOKING-0001-37 PCSO Booking History 2395331
         c. CRIM-0001-10 JAN 2020 Stipulated Order Bond Mod
         d. CRIM-0011-22 FEB 2021 Beacham Motion Bond Mod & Sentencing
         e. CRIM-0023-34 OCT 2022 Motion Order Denying Sentence Reduction
         f. DEF Wellpath Carrafa Wolf Initial Rule 26 Disclosures
         g. GLC-000001 Period 03.15.22-03.15.23 Redacted Health Care Facility Liability Policy Reimb Form
         h. GRIEVANCE-FORM-0001-3 05.15.19 (Rev. 12.28.20) HCD-100_A-10 Grievance Process for HC Cmplnts
         i. GRIEVANCE-FORM-0004 11.15.22 Wellpath Inmate Medical Grievance Form
         j. JJB-CHART-0001-144 12.29.18-04.02.21 Wellpath
         k. Wellpath Defs Initial Disclosures
8. Beacham Booking # 17662
9. Beacham Booking # 17833
10. Beacham Booking # 18013
11. Park County Detention Center Inmate Rules and Regulations

## Part IV
### Scope of Report

The scope of this report will pertain to **Sheriff Scott Steward, Lieutenant Joe Torczon, Officer Dave Nyreen** and/or any **Park County Detention Center Detention Deputies'** responsibilities for operating a jail, and any actions taken to interfere with, or disregard any medical orders given by **Wellpath, LLC**, primarily, **Ashli Carrafa, LPN** and **Nancy Wolf, NP**, or any delay in **Joshua Beacham**'s access to **Wellpath, LLC**, primarily, **Ashli Carrafa, LPN** and **Nancy Wolf, NP** for medical care, evaluation, diagnosis and/or treatment.

## Part V
### Professional Opinions

**SECTION A:** <u>TO INCLUDE OPINIONS RELATING TO THE DUTIES AND RESPONSIBILITIES OF SHERIFF SCOTT STEWARD, LIEUTENANT JOE TORCZON, OFFICER DAVE NYREEN AND/OR ANY PARK COUNTY DETENTION CENTER DETENTION DEPUTY PERTAINING TO INMATE BEACHAM.</u>

**Opinion A-01.** Sheriff Scott Steward, Lieutenant Joe Torczon, and/or any Park County Detention Center Detention Deputies have a responsibility to follow the evaluation, diagnoses and treatment of Joshua Beacham by Wellpath's certified and licensed on site medical professionals.

   a. Beacham 1-3
   b. Documents for Production
   c. Pltf Initial Disclosures 04.10.23
7. Documents Produced by Wellpath:
   a. AGREEMENT-HCS-0001-31
   b. BOOKING-0001-37 PCSO Booking History 2395331
   c. CRIM-0001-10 JAN 2020 Stipulated Order Bond Mod
   d. CRIM-0011-22 FEB 2021 Beacham Motion Bond Mod & Sentencing
   e. CRIM-0023-34 OCT 2022 Motion Order Denying Sentence Reduction
   f. DEF Wellpath Carrafa Wolf Initial Rule 26 Disclosures
   g. GLC-000001 Period 03.15.22-03.15.23 Redacted Health Care Facility Liability Policy Reimb Form
   h. GRIEVANCE-FORM-0001-3 05.15.19 (Rev. 12.28.20) HCD-100_A-10 Grievance Process for HC Cmplnts
   i. GRIEVANCE-FORM-0004 11.15.22 Wellpath Inmate Medical Grievance Form
   j. JJB-CHART-0001-144 12.29.18-04.02.21 Wellpath
   k. Wellpath Defs Initial Disclosures
8. Beacham Booking # 17662
9. Beacham Booking # 17833
10. Beacham Booking # 18013
11. Park County Detention Center Inmate Rules and Regulations

## Part IV
### Scope of Report

The scope of this report will pertain to **Sheriff Scott Steward, Lieutenant Joe Torczon, Officer Dave Nyreen** and/or any **Park County Detention Center Detention Deputies'** responsibilities for operating a jail, and any actions taken to interfere with, or disregard any medical orders given by **Wellpath, LLC**, primarily, **Ashli Carrafa, LPN** and **Nancy Wolf, NP**, or any delay in **Joshua Beacham**'s access to **Wellpath, LLC**, primarily, **Ashli Carrafa, LPN** and **Nancy Wolf, NP** for medical care, evaluation, diagnosis and/or treatment.

## Part V
### Professional Opinions

**SECTION A:** TO INCLUDE OPINIONS RELATING TO THE DUTIES AND RESPONSIBILITIES OF SHERIFF SCOTT STEWARD, LIEUTENANT JOE TORCZON, OFFICER DAVE NYREEN AND/OR ANY PARK COUNTY DETENTION CENTER DETENTION DEPUTY PERTAINING TO INMATE BEACHAM.

**Opinion A-01.** Sheriff Scott Steward, Lieutenant Joe Torczon, and/or any Park County Detention Center Detention Deputies have a responsibility to follow the evaluation, diagnoses and treatment of Joshua Beacham by Wellpath's certified and licensed on site medical professionals.

**Comments and Basis for Opinion**

There is no evidence in the information received to date indicating **Sheriff Scott Steward, Lieutenant Joe Torczon, Officer Dave Nyreen** and/or any **Park County Detention Center Detention Deputies** were aware of any alleged flaws in the medical diagnosis or prescribed treatment by the contracted medical professionals (**Wellpath**'s certified and licensed on-site medical professionals). The **Park County Detention Center** had a grievance procedure. There is no indication **Joshua Beacham** filed a grievance about his medical care.

Opinion A-02.    The responsibility and authority for diagnosing, treating and otherwise providing medical care for inmates in the Park County Detention Center was at the time appropriately delegated, by contract, to Wellpath, LLC, and their certified and licensed on site medical professionals.

**Comments and Basis for Opinion**

Dispensation of medical services in jails is one of the most difficult challenges facing counties, sheriffs and corrections administrators. In the majority of the nation's jails, medical care for prisoners is provided by either in-house medical providers or by private firms specializing in the provision of medical services to prisoners. Medical services vary widely from one system to another. The greatest difficulty in providing quality medical care is faced by corrections facilities or systems with the most limited access (rural areas) to such medical care resources. Jails located near large metropolitan areas, naturally, have the greatest medical care resources to draw upon.

**July 1, 2019, Amendment:** [10]

AMENDMENT TO EXHIBIT A OF THE AGREEMENT. The Parties agree that the Staffing Matrix attached hereto as Exhibit A, Effective July 1, 2019, shall replace the previous Staffing Matrix attached to the Agreement as Exhibit A.

| Title | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Hrs/WK |
|---|---|---|---|---|---|---|---|---|
| Health Service Administrator | 1 | 1 | 1 | 1 | | | | 4 |
| Nurse Practitioner | | | 2 | | | | | 2 |
| LPN | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 |

Based on my experience with smaller jails in rural areas, this medical staffing coverage is consistent with and/or better than most facilities. The majority of smaller rural jails do not have a Nurse 8 hours a day 7 days a week.

It is important to note that **Sheriff Scott Steward, Lieutenant Joe Torczon, Officer Dave Nyreen** and/or any of the **Park County Detention Center Detention Deputies** *are not healthcare specialists or experts*. They are corrections officers trained to incarcerate inmates while providing inmates the basic necessities and maintaining security, safety, order and discipline. Corrections officers *are not educated, trained or licensed to diagnose or determine appropriate treatments for inmates*. Thus, corrections officials must rely on the contracted healthcare professionals to provide medical services to those prisoners in need of such care. In the instant case, that would indicate inmate healthcare was the responsibility of **Wellpath** and their certified and licensed on-site medical professionals, primarily **Ashli Carrafa, LPN** and **Nancy Wolf, NP** with whom **Park County** was contracted [11] at the time.

---

[10] AGREEMENT-HCS-0001-31 ( Bates # Agreement-HCS-000029 thru 000031).

[11] AGREEMENT-HCS-0001-31 (Bates # Agreement-HCS-000001 thru 000031).

There is no indication **Sheriff Scott Steward, Lieutenant Joe Torczon, Officer Dave Nyreen** and/or any of the **Park County Detention Center Detention Deputies** were in violation of **Wyoming Statute 18-6-303**. There is no evidence that jail officials denied **Joshua Beacham** medical care at any time.

If **Joshua Beacham** wanted to bring his complaints or medical issues up with the **Detention Administrator** for the **Park County Detention Center (Lt. Torczon)** then he should have used the appropriate system in place to do so. The proper process was to follow the **Park County Detention Center Grievance System**, as outlined in the **Park County Detention Center Inmate Rules and Regulations**. Correctional officials must rely on medical judgments made by professional health care providers employed by a health services contractor, such as **Wellpath**.

Opinion A-03.    Sheriff Scott Steward, Lieutenant Joe Torczon, Officer Dave Nyreen and/or any of the Park County Detention Center Detention Deputies did not dictate the medical treatment of Joshua Beacham, nor did they interfere with any medical treatment. The medical treatment and medical decisions were made by Wellpath's medical staff. Primarily, Ashli Carrafa, LPN and Nancy Wolf, NP.

### Comments and Basis for Opinion

Clearly, **Sheriff Scott Steward, Lieutenant Joe Torczon, Officer Dave Nyreen** and/or any of the **Park County Detention Center Detention Deputies** did not dictate any treatment for **Joshua Beacham**, nor did they interfere with any medical treatment for **Joshua Beacham**. It was reasonable and appropriate for **Sheriff Scott Steward, Lieutenant Joe Torczon, Officer Dave Nyreen** and/or any of the **Park County Detention Center Detention Deputies** to rely upon the medical staff to provide medical treatment to **Joshua Beacham** and all inmates in the **Park County Detention Center**. **Sheriff Scott Steward, Lieutenant Joe Torczon, Officer Dave Nyreen** and/or any of the **Park County Detention Center Detention Deputies** did not interfere with the medical providers. Plainly, based on the medical records, the decisions being made regarding **Joshua Beacham**'s hernia were made by **Wellpath**'s medical staff (primarily, **Ashli Carrafa, LPN** and **Nancy Wolf, NP**).

Opinion A-04.    Former Sheriff Scott Steward and current Sheriff Darrell Steward maintained policies whereby all prisoners, whether sentenced or not, had access to health care providers, including outside health care services when necessary and the Park County Sheriff's Office maintained sufficient health care providers at the jail such that Beacham's medical needs were time addressed by medical staff.

### Comments and Basis for Opinion

Jails are complex institutional operations; delegating responsibility and authority requires the Sheriff reasonably ensure staff is informed of what is required of them and how their duties are to be carried out. Staff must have a working understanding of operational responsibilities to facilitate staff and prisoner safety; facility security, order, and discipline; and adherence to laws and regulations. Policy manuals provide staff an organized, comprehensive reference for such information. Former **Sheriff Scott Steward** and current **Sheriff Darrell Steward** provided a policy manual which offered guidance to security staff and gave clear direction as to the proper delegation of duties and

responsibilities pertaining to the provision of medical care for inmates. I reviewed the chapters provided to me in the case material:[12]

> Security staff are to observe and report medical issues to the facility medical providers. The medical providers are to diagnose and determine treatment. There should be a clear delimitation between security staff's responsibilities and the responsibilities of the licensed medical professionals, (**Wellpath**'s medical staff.)

The policies state in part:

> Inmates regardless of ability to pay will receive any necessary emergency medical treatment while in custody.

> Any time an inmate is showing or reporting symptoms that are imminently life threatening (i.e. cardiac arrest, complication with a pregnancy, etc.), a deputy will notify dispatch to page an ambulance to the Detention Center (when in doubt, page).

> In other, non life threatening cases, the Detention Center medical authority will be contacted for medical advice.[13]

> Hospitalization will not be denied for an inmate with a legitimate need as diagnosed by a physician. Detention deputies will maintain containment and security of the inmate while hospitalized.[14]

> The Detention Center Medical Authority will be notified of all requests submitted by inmates. No deputy may disregard a request for non-emergency medical care.

> The Detention Center Medical Authority will evaluate the inmate's condition / symptoms. Deputies will not make recommendations or dispute the medical orders. Deputies will assist as needed during these visits.

> Orders of the Detention Center Medical Authority will be followed. No changes in times or doses of any medication / treatment will be made without prior approval of the Detention Center Medical Authority.[15]

Former **Sheriff Scott Steward** and current **Sheriff Darrell Steward** maintained policies whereby all prisoners, whether sentenced or not, had access to health care providers, including outside health care services when necessary and the **Park County Sheriff's Office** maintained sufficient health care providers at the jail such that **Joshua Beacham**'s medical needs were timely addressed by medical staff.

I found the **Park County Detention Center**'s policy pertaining to medical care to be well put together and understandable. These policies are in accordance with **Wyoming Statute 18-6-303**. There is no evidence that jail officials interfered with medical staff's decisions, diagnosis and treatment of **Joshua Beacham**. There is no indication that jail officials failed to follow their policy. These policies are consistent with the industry norm and the standard of care based on my experience working with third-party medical providers.

---

[12] Documents Produced by Official Capacity.
[13] OFFICIAL CAPACITY 000008
[14] OFFICIAL CAPACITY 000012.
[15] OFFICIAL CAPACITY 000019.

## Part VI
## Conclusion

There is no evidence, in the case record, to conclude **Sheriff Scott Steward, Lieutenant Joe Torczon, Officer Dave Nyreen** interfered with or delayed access to medical care during **Joshua Beacham**'s incarceration. **Joshua Beacham** was under the medical care of **Wellpath**'s certified and licensed on-site medical professionals, specifically, **Ashli Carrafa, LPN** and **Nancy Wolf, NP**. There is no evidence **Sheriff Scott Steward, Lieutenant Joe Torczon** and **Officer Dave Nyreen** were deliberately indifferent to serious medical needs in this matter.

The conduct of **Sheriff Scott Steward** and **Lieutenant Joe Torczon** *did not* fall below the standard of care in corrections facilities. Without a question, medical care was provided, by contract, through **Wellpath, LLC**.

It was required for **Sheriff Scott Steward, Lieutenant Joe Torczon, Officer Dave Nyreen** and/or any of the **Park County Detention Center Deputies** to rely upon **Wellpath**'s certified and licensed on-site medical professionals to provide diagnosis and care to **Joshua Beacham** and to not second-guess or interfere with their judgments.

It would be improper for **Sheriff Scott Steward, Lieutenant Joe Torczon, Officer Dave Nyreen** and/or any of the **Park County Detention Center Detention Deputies** to evaluate, diagnose and treat **Joshua Beacham**'s medical needs or to disregard the orders of the medical professionals assigned that task.

Clearly, if **Joshua Beacham** wanted to bring his complaints or medical issues up with the **Detention Administrator** for the **Park County Detention Center (Lt. Torczon)**; he should have used the **Park County Detention Center Grievance System** as outlined in the **Park County Detention Center Inmate Rules and Regulations**. Unfortunately, **Joshua Beacham** *did not* utilize the accessible and easily understood grievance system in place.

The opinions provided are based on the review of information available as of August 24, 2023. If in the future, additional information is made available, I reserve the option of supplementing my report prior to deposition.

Pursuant to 28 U.S.C., Sec. 1746, I hereby certify, state, and verify, under penalty of perjury that the foregoing is true and correct. Executed on this 24th day of August 2023.

Sean T. Stewart