Stephenson D. Emery WSB #5-2321
WILLIAMS, PORTER, DAY, AND NEVILLE, PC
159 N. Wolcott St., Suite, 400
P.O. Box 10700
Casper, Wyoming 82601
T: 307 265 0700
F: 307 266 2306
semery@wpdn.net
Attorney for Defendants Wellpath, LLC, Ashli Carrafa, LPN, and Nancy Wolf, NP

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

---

| | | |
|---|---|---|
| JOSHUA BEACHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SCOTT A. STEWARD, | ) | |
| In his official and individual capacities, | ) | |
| | ) | |
| LT. JOE TORCZON, | ) | |
| In his official and individual capacities, | ) | |
| | ) | |
| NANCY WOLF, | ) | Civil Action No. 22-CV-222 |
| In her individual capacity, | ) | |
| | ) | |
| ASHLI CARRAFA, LPN, | ) | |
| In her individual capacity, | ) | |
| | ) | |
| DETENTION OFFICER NYRENE, | ) | |
| In his individual capacity, | ) | |
| | ) | |
| WELLPATH, LLC, f/k/a | ) | |
| Correct Care Solutions, LLC, | ) | |
| In its official and individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS WELLPATH, LLC, ASHLI CARRAFA, LPN, AND NANCY WOLF, NP'S DESIGNATION OF EXPERT WITNESSES**

Page 1 of 7

Defendants, by and through counsel, and pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure and the Scheduling Order of this Court designate their expert witnesses in the above-captioned matter as follows:

1. All opinions of expert witnesses set forth herein are stated to the required degree of probability pursuant to applicable law in the witness's field of expertise.

2. All material and information relied upon by expert witnesses in forming opinions are of the type ordinarily and reasonably relied upon by experts in the field of such witnesses in forming such opinions and are expressed to a reasonable degree of probability.

3. The contents of depositions of each witness, if a deposition is taken, are incorporated in this witness designation for each witness.

4. This designation is intended to supplement any and all interrogatories and requests for production of documents propounded by Plaintiffs pertaining to expert witnesses.

5. All experts listed herein may criticize, comment upon, and/or rebut the deposition testimony, trial testimony, data, and written reports and materials compiled or relied upon by Plaintiff's experts in this case.

6. The experts listed herein may supplement their opinions to respond to opinions rendered by Plaintiff's experts.

7. Defendants reserve the right to designate rebuttal witnesses in response to opinions of Plaintiff's experts.

8. Defendants reserve the right to call any plaintiff expert at trial, regardless of whether Plaintiff ultimately retains or withdraws the expert.

9.   Discovery is ongoing. Defendants' retained experts may supplement their opinions in light of any new evidence that is discovered.

### RETAINED EXPERT WITNESSES

Defendants have retained the following individuals as an expert witness to testify in this case. Defendant will provide this expert, without subpoena for deposition at Plaintiff's expense. Defendants reserve the right to supplement this designation, as new information is made known to Defendants or the expert. Supplementation may be in the form of depositions, correspondence, or through supplemental exhibits or reports. Finally, Defendants reserve the right to supplement this designation in response to any expert designation by Plaintiff, and any corresponding deposition of any expert designated by Plaintiff. All depositions and discovery responses are therefore incorporated by reference herein.

1.   **Bruce J. Feigelson, M.D., F.A.C.S.**
      **Colorado Permanente Medical Group, P.C.**
      **380 Exempla Circle**
      **Lafayette, CO 80026**
      **303.338.4545**

Dr. Bruce J. Feigelson's report is attached as Exhibit A. Information concerning his background is contained in his curriculum vitae attached hereto as Exhibit B. Dr. Feigelson is board-certified by The American Board of Surgery and is a fellow of the American College of Surgeons and the American Society of Breast Surgeons. He has undertaken a review of medical records, depositions and case documents for Joshua Beacham provided to date to include:

1.   Deposition Exhibit 1 – Regional West Medical Center Admission 06/01/2021
2.   Deposition Exhibit 2 – Department of Corrections Records (IND-DOC 000001-000213)
3.   Deposition Exhibit 3 – Regional West Medical Center Outside Documentation
4.   Deposition Exhibit 4 – Regional West Medical Center Outside Documentation
5.   Deposition Exhibit 7 – Wellpath Medical Chart Inmate Beacham
6.   Deposition Exhibit 8 – Wellpath Electronic Patient Record (46 pp)
7.   Deposition Exhibit 9 – Wellpath Electronic Records (28 pp)

8. Deposition Exhibit 15 – Plaintiff's Response to Wellpath Defendants' First Interrogatories
9. Deposition Exhibit 17 – Plaintiff's Response to Individual Capacity Defendants' First Set of Interrogatories
10. Deposition Exhibit 18 – Thomas Etter, LLC (IND-TE 000001-000010)
11. Deposition Exhibit 19 – Yellowstone Behavioral Health Center (IND-YBHC 000001-000020)
12. Deposition Transcript of Jason LaTowsky, M.D.

Dr. Feigelson has not testified as an expert witness at trial or by deposition the last three years. Charges for deposition and trial testimony are listed in the Fee Schedule Attached hereto as Exhibit F.

Dr. Feigelson is expected to testify consistent with the opinions and findings set forth in his report and in his anticipated deposition. He reserves the right to alter or amend his opinions based on additional medical records or discovery obtained in the case. He reserves the right to supplement based on new information. Dr. Feigelson reserves the right to use demonstrative exhibits to illustrate his opinions for the jury.

2. **Kathryn J. Wild, RN, MPA, CCHP-RN**
   **1148 Dreamcatcher Bluff**
   **Mesquite, NV 89034**
   **909.720.0961**

Kathryn Wild's report is attached as Exhibit C. Information concerning her background is contained in her curriculum vitae attached hereto as Exhibit D. Kathryn Wild is a correctional health consultant. She has undertaken a review of medical records, depositions and case documents for Joshua Beacham provided to date to include:

1. Complaint filed 10/24/22
2. First Amended Complaint filed 1/23/23
3. Defendants' Answer to First Amended Complaint, Affirmative Defenses, and Jury Demand
4. Individual Defendants' Answer to First Amended Complaint
5. Defendants Wellpath, LLC, Ashli Carrafa, LPN, and Nancy Wolf, NP's Answer to First Amended Complaint
6. Beacham 0004-0211 Regional West Medical Center Admission

7.  Department of Corrections Records IND-DOC 1-213
8.  RWMC Outside Documentation Exhibit 3 & 4
9.  PCSP Booking History
10. Billings Clinic Medical Records
11. JJB-Chart 1-114, 12/29/18 – 4/2/21 Wellpath
12. Wellpath Electronic Patient Record (46 pp)
13. Wellpath Electronic Records (28 pp)
14. Plaintiff's Response to Wellpath Defendants' First Interrogatories
15. Inmate Orientation
16. Wellpath Policies:
    a. Non-Emergency Care
    b. Communications on Patients Health Needs
    c. Medical Autonomy
    d. Grievance Process Health Care Complaints
    e. Emergency Response
    f. Hospitals and Specialty Care
    g. Initial Health Screening
    h. Nursing Assessment Protocols
17. Inmate Rules and Regulations
18. PCSO Policy on Medical Services
19. PCSO Policy on Emergency Medical Treatment
20. Wellpath Inmate Medical Grievance Form – Blank
21. Miscellaneous Request Forms
22. Deposition Transcript of Dr. Jason LaTowsky
23. Agreement for Inmate Health Care Services at Park County, Wyoming
24. Initial Expert Report of Sean T. Stewart
25. Deposition Transcript of Joshua Beacham
26. National Commission on correctional Health Care (NCCHC) – Standards for Health Services in Jails (2018 Edition)

A list of cases where Kathryn Wild has testified as an expert witness at trial or by deposition is attached as Exhibit E. Charges for deposition and trial testimony are listed in the Fee Schedule Attached hereto as Exhibit F.

Kathryn Wild is expected to testify consistent with the opinions and findings set forth in her report and in her anticipated deposition. She reserves the right to alter or amend her opinions based on additional medical records or discovery obtained in the case. She reserves the right to supplement based on new information. Kathryn Wild reserves the right to use demonstrative exhibits to illustrate her opinions for the jury.

**NON-RETAINED EXPERT**

1.    **Jason LaTowsky, M.D.**
      **Regional West Medical Center**
      **Two West 42nd Street, Suite 3100**
      **Scottsbluff, Nebraska 69361**

Dr. LaTowsky is board certified in general surgery. Information concerning his background is contained in his deposition attached hereto as Exhibit B. He is the physician who performed plaintiff's open left inguinal hernia with mesh surgery on June 1, 2021.

Dr. LaTowsky is expected to testify consistent with his deposition taken on August 02, 2023. Dr. LaTowsky reserves the right to supplement based on new information. Dr. LaTowsky reserves the right to use demonstrative exhibits to illustrate his opinions for the jury which will include exhibits contained in his deposition.

**REBUTTAL WITNESSES**

Defendants reserve the right to designate additional rebuttal testimony to address and/or rebut the opinions or conclusions proffered by Plaintiff's experts.

DATED this 1st day of September, 2023.


/s/ Stephenson D. Emery
Stephenson D. Emery WSB #5-2321
WILLIAMS, PORTER, DAY, AND NEVILLE, PC
159 N. Wolcott St., Suite, 400
P.O. Box 10700
Casper, Wyoming 82601
T: 307 265 0700
F: 307 266 2306
semery@wpdn.net
Attorney for Defendants Wellpath, LLC, Ashli Carrafa, LPN, and Nancy Wolf, NP

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2023, I electronically filed the foregoing **DEFENDANTS WELLPATH, LLC, ASHLI CARRAFA, LPN, AND NANCY WOLF, NP'S DESIGNATION OF EXPERT WITNESSES** with the Clerk of the Court using the CM/ECF system which will send notification of this filing to all counsel of record.

/s/ Stephenson D. Emery
Stephenson D. Emery WSB #5-2321
WILLIAMS, PORTER, DAY, AND NEVILLE, PC
159 N. Wolcott St., Suite, 400
P.O. Box 10700
Casper, Wyoming 82601
T: 307 265 0700
F: 307 266 2306
semery@wpdn.net
Attorney for Defendants Wellpath, LLC, Ashli Carrafa, LPN, and Nancy Wolf, NP

# EXHIBIT A

To:  Steve Emery
From:  Bruce Feigelson

RE:  Beacham v. Wellpath, et al. Expert Opinion

Dear Steve,

I have reviewed all the provided documents.  My comments and opinions reflect those arrived at following review of the 12 files provided.  I have not examined the plaintiff, nor have I sought out any additional information or data related to this case.

My review took a bit of time as the electronic chart had some files out of chronological order, and there were several elements which I had to cross reference to confirm that they were, in fact, duplicate from prior pages or to confirm prior notes, as well as exclude any potential conflicting statements from one document to another.

Further input could be provided if given the opportunity to examine the plaintiff/patient.

That said, here are my thoughts on this case.

Hernias are quite common.  Among the most common hernias are those arising in the groin (inguinal hernia), more common in men than women, and occurring in up to 10% of the male population.  Hernias vary in size from small occult hernias to large hernias which can extend into the scrotum.  Most hernias, including inguinal hernias, are repaired "electively," meaning scheduled for a future time based on convenience for patient and surgeon, rather than emergently, meaning repaired soon after the patient is seen by a provider and found to have an indication to repair the hernia very soon after being seen.  Those indications include, but are not limited to, intestinal obstruction, suggestion of intestine losing blood supply and at risk for ischemia (loss of oxygen supply) or infarction (death of that involved tissue), signs of secondary systemic results of the hernia such as sepsis (infection in the blood stream which can adversely affect normal body physiologic function), local infection such as an abscess.  Vital to the assessment of hernia and the decision on timing is combining BOTH the provided history (how long has the hernia been present, listening for sudden changes in symptoms, nausea, vomiting, fevers, chills, etc.) and the physical exam (vital signs, previously reducible hernia suddenly becomes not reducible, redness, degree of tenderness of the hernia, overall appearance of the patient, etc.).

Hernia repairs are commonly performed as an outpatient surgery, but depending on the patient, medical history, extent of surgery, emergent vs non emergent nature, social situation, occasionally admission overnight is appropriate.

Repairs of any notable size (>1 cm), and essentially all inguinal hernias today, are repaired with mesh.  There are many mesh products available, and selection of which mesh is based on the surgeon's preferences and experience.  The mesh allows coverage of the hernia opening,

addressing the anatomic issue without necessarily closing the tissue involved in the hernia. This allows for a tension free repair, which is both less painful for recovery and has a higher long term success rate/lower recurrence rate.

There are several techniques to repair inguinal hernias, open vs laparoscopic, anterior vs pre peritoneal, different types of mesh which can be used, and different ways to secure the mesh. Some repairs do not even require fixation based on either the type of repair employed or the type of mesh selected.

For most surgeons, once they settle into their preferred inguinal hernia surgery technique, recurrence rates should be at or below 5%. Recurrent hernias are more complicated, have higher risks, including higher recurrence rates, and will usually take a bit longer to recover from.

In general, risks for any inguinal hernia surgery include, but are not limited to, bleeding, infection, seroma (fluid collection at or near the surgical site), recurrent hernia, nerve injury (which could be transient or permanent), ischemic orchitis (loss of blood flow to the testicle which could result in loss of a testicle), swelling which could take several weeks to resolve, irritation of the pubic tubercle if an anchoring suture secured the mesh at this location, feeling the mesh even after an otherwise uneventful surgery/recovery.
¶
The plaintiff had a prior RIGHT inguinal hernia repair several years before the hernia issue involved in the case. The LEFT side hernia, which is the site involved in the current discussion, was first noted as far back as 2019 (referenced in one document). While there is no definitive single source timeline to utilize, the represented history by the plaintiff seems to be genuine but unfortunately factually incorrect in one note of the plaintiff stating that he thought the prior hernia repair may have been on the left. Incorrect recollection of prior care is not an uncommon issue, and a patient not remembering laterality for a prior procedure or surgery is common. From the limited review and lack of my ability to meet the plaintiff, I must give him the benefit of the doubt and assume he does not recall the location of the prior hernia repair from many years prior and that this is an honest mistake. Physical exam could aid in this issue as there could be scars demonstrating laterality. His prior surgery was laparoscopic which does not aid in discovering laterality.

There was some lack of clarity in the chart regarding if the plaintiff had a THIRD hernia repair in addition to the 2013 RIGHT hernia repair and the LEFT 2021 hernia repair. I have concluded that there were only the 2 surgeries, provided no other records or facts become available for review to conclude otherwise.

The left inguinal hernia was noted by the plaintiff to be progressing in size and symptoms over the course of several months. However, none of the symptoms, subjective statements by the plaintiff, documented physical exam findings, or intraoperative findings suggest the hernia was a medical or surgical emergency. An emergency for a patient and a medical emergency are often NOT the same. For example, a breast cancer patient will want surgery for their cancer immediately. However, that is not a medical emergency as data will confirm that prognosis is

not negatively impacted by a short interval between time of diagnosis and time of initiation of treatment/surgery).   There are no notes reflecting bowel obstruction, perforation, bleeding, bowel viability at risk, or systemic findings suggestive of sepsis/ multisystem organ failure, mental status changes, or other anatomic or physiologic alterations that could elevate the acuity of the hernia or accelerate the timeline to repair the hernia.  He does note difficulty having bowel movements but does not say he cannot have a bowel movement.

That the hernia was symptomatic, with difficulty having a bowel movement, and pain, while uncomfortable for the plaintiff, does not alter the elective nature for this hernia repair.  I clearly appreciate the plaintiff's frustration with the time delay from initial presentation of the hernia until evaluation by the surgeon and ultimate hernia repair.  However, the nurse was absolutely correct in trying to assemble the prior pertinent records prior to being evaluated by the surgeon, given the lack of findings on the physical exam which would require an emergent evaluation by a surgeon.  Old records are invaluable, especially when there was a question of laterality of the 2013 hernia repair.  I am familiar with the potential difficulties in obtaining prior medical records.  Signed HIPPA release forms are required, people move or do not recall who provided care or where that care was provided.  I can only imagine obtaining these records for an incarcerated person is only more difficult.

Furthermore, while the plaintiff notes many subjective issues most likely related to the hernia (pain, obstipation, swelling, visible hernia), the surgery was done in a rather timely fashion from the time he was seen by the surgeon until surgery was performed (approx. 1 month).

The hernia is described as extending down into the scrotum.  These hernias inherently are associated with notable post op swelling which may take up to months to resolve, higher post op pain levels given the more extensive repair, increased time until resuming full activities post operatively, and risk to both the nerves associated with the spermatic cord and inguinal canal as well as increased risk of ischemic orchitis.

The plaintiff is concerned post operatively that he has lost a testicle.  I see no evidence to support that claim, either in the Surgery post op exam notes or in an objective imaging study which would definitively confirm presence or suggest absence of a testicle.  If there is a lingering question, I would recommend obtaining an ultrasound of his scrotum.

The concern for loss of sexual function is not an associated risk for hernia repairs, or for allowing a hernia to persist without repair.  This concern holds no water.

The past medical history of PTSD is certainly of note in the overall health and well-being of the plaintiff.  However, associating the existence of, or symptoms secondary to, the hernia with PTSD, in my opinion as a surgeon and not a mental health expert, even if the hernia is/was painful, seems to be unsound.  In my opinion, and in my experience, I do not feel the hernia alone can reasonably be the precipitating cause of worsening PTSD symptoms.

From the records provided, it appears the hernia was evaluated in a slow but acceptably timely manner, given the need to obtain the prior records from many years prior.  No signs, symptoms, or indications to consider this an emergency are presented within the provided documents.  His post op course seems to demonstrate an acceptable course.  There are no findings or notes to suggest a significant post op complication or complaint related to postponing the surgery from the time the hernia was first brought to the attention of the medical team and ultimately undergoing surgical repair.  There are no post op issues that are not reasonable given the indicated surgery, extent of the surgery performed, and available records documenting the recovery to date.

Further input or comment would certainly be facilitated by the opportunity to interview and examine the patient.  Should more records become available, that too could provide the basis for further comment.

Respectfully submitted,

Bruce J. Feigelson, MD, FACS

Electronically signed by Bruce J. Feigelson, MD at 8:25 am MST 9/1/23

# EXHIBIT B

# Bruce J. Feigelson, MD, FACS
# General Surgeon

## PROFESSIONAL EXPERIENCE

2008- Present      Colorado Permanente Medical Group, P.C.    Lafayette, CO
*General Surgeon*
- Chairman, Department of Trauma and Surgery, Good Samaritan
    Hospital, 2018-2020
- Medical Executive Committee, Good Samaritan Hospital, 2018-
    2020
- Member, Ethics Committee, Good Samaritan Hospital, 2009
- Breast Cancer Care Clinical Lead, Kaiser Colorado, 2013-2016
- Site Lead, Multidisciplinary Breast Cancer Conference, 2016-Present
- Lead, Kaiser Colorado Regional Breast Surgeons, 2013-2022

1999-2008         Piedmont Surgical Associates, L.L.C.        Atlanta, GA
*General Surgeon*
- Teaching Staff, Emory University Surgery Residents, 1999-2008
- Managing Partner, 2004-2006
- Blood Utilization Committee, Piedmont Hospital, 2001-2008
- Member, Peri-operative Diabetes Management Pathway, 2007
- Infection Control Committee, Piedmont Hospital, 1999-2000

1998-1999         Naval Hospital Pensacola                Pensacola, FL
*General Surgeon*
- Breast Clinic Coordinator
- Teaching Staff, Kessler Air Force Hospital Surgery Residents
- Teaching Staff, Naval Hospital Pensacola Family Practice Residents

1997-1998         Naval Hospital Keflavik            Keflavik, Iceland
*General Surgeon*
- Coordinator, Grand Rounds Conference
- Chairman, Morbidity and Mortality conference
- Member, Executive Committee of the Medical Staff
- Member, Disaster Preparedness Committee

1991-1993     Naval Mobile Construction Battalion Three, Port Hueneme, CA
*General Medical Officer*
- Medical Department Head
- Navy Achievement Medal
- Sea Service Medal, 1992, second award, 1993

## POSTGRADUATE TRAINING

1993-1997          Naval Medical Center          San Diego, CA
*General Surgery Resident*
- Meritorious Unit commendation, 1997
- Fourteen Letters of Appreciation
- Chief Resident, 1996-97

1990-1991          Naval Medical Center          San Diego, CA
*Surgical Intern*
- National Defense Medal

## EDUCATION

1986-1990          University of Cincinnati          Cincinnati, OH
*Doctor of Medicine*
- United States Navy Health Professions Scholarship
- President, Medinotes
- Chairman, Medical Student Orientation
- Founder, Outreach for Impaired Students
- Substance Abuse Counselor, VA Medical Center

1982-1986          Emory University          Atlanta, GA
*Bachelor of Arts, Chemistry*
- Alpha Epsilon Delta Premedical Honor Society
- Dean's List
- Sigma Nu Fraternity

## CERTIFICATES

- Diplomate, American College of Surgeons, 1998, recertified 2008, 2018,
- Diplomate, National Board of Medical Examiners
- Laparoscopic Ventral Hernia Course, 1999
- Laparoscopic Inguinal Hernia Course, 1996
- Laparoscopic Nissen Fundoplication Course, 1996
- Laparoscopic Splenectomy Course, 1997
- Laparoscopic Colectomy Course, 2001
- Laparoscopic Endocrine Course, 2002

## MEDICAL LICENSE

- Colorado Medical Board
- DEA

**PROFESSIONAL MEMBERSHIPS**

- Fellow, American College of Surgeons
- American Society of Breast Surgeons

**PUBLICATIONS**

Feigelson, BJ, Acosta, JA, Feigelson, HS, Saunders, E, Findley, A:T1 Breast Carcinoma in Women 70 Years of Age and Older May Not Require Axillary Lymph Node Dissection, Am J Surg, 1996; 172:487-90.

Feigelson, Bruce J. (2021) Adrenal Glands, In: L Skandalakis (eds) Surgical Anatomy and Technique (5th edition), pp 673-699. Springer, Cham.

Feigelson, Bruce J. (2021)  Breast, In: L Skandalakis (eds)Surgical Anatomy and Technique (5th edition), pp91-114, Springer, Cham.

**MILITARY SERVICE**

Lt Commander, United States Navy, Active Duty, 1990-1999.

EXHIBIT C

**Kathryn J. Wild, RN, MPA, CCHP-RN**
**1148 Dreamcatcher Bluff, Mesquite, NV 89034**
**Phone: 909-720-0961**

## Expert Report

### I.     INTRODUCTION

My name is Kathryn J. Wild.  My business address is 1148 Dreamcatcher Bluff, Mesquite, NV 89034.  I was retained by Williams, Porter, Day & Neville, P.C. to consult in the case of *Joshua Beacham v Scott A. Steward, in his official and individual capacities, Lt. Joe Torczon, in his official and individual capacities, Nancy Wolf, in her individual capacity, Ashli Carrafa, LPN, in her individual capacity, Detention Officer Nyrene, in his individual capacity, Wellpath, LLC, f/k/a Correct Care Solutions, LLC, in its official and individual capacities.*

I am a licensed Registered Nurse with a master's degree in Public Administration and Certified as a Corrections Healthcare Professional - RN by the National Commission on Correctional Healthcare (NCCHC) concerning the delivery of specialized nursing care in correctional facilities. I have worked in the field of Corrections Healthcare for over 35 years as a Registered Nurse, and Health Services Administrator responsible for the administration of healthcare, training and supervision of healthcare employees, as well as the formation and implementation of policy applicable to staff who provide healthcare to persons housed in corrections facilities. My Curriculum Vitae and fee schedule are attached. I am retained as an expert witness who is knowledgeable and experienced in the training, supervision and monitoring of healthcare administered to prisoners housed in the setting of a correctional facility, including but not limited to the areas of corrections nursing care, corrections healthcare, corrections healthcare administration, corrections healthcare policy formation and implementation, and the implementation and maintenance of policies and procedures that comply with national corrections standards, including but not limited to those by the NCCHC, the American Corrections Association (ACA), and the Prison Rape Elimination Act (PREA).  I have served as an accreditation surveyor for the Institute for Medical Quality (IMQ) providing accreditation surveys in Local Detention Facilities and Juvenile Halls.  In addition, I have provided many Local Detention Facilities with on-site preparation for NCCHC and ACA accreditation surveys and am very familiar with the standards for the delivery of healthcare in correctional settings.

### II.     MATERIALS REVIEWED

In preparation for forming the opinions expressed below, in addition to my experience in the correctional healthcare field, I have reviewed the following materials:

1. Complaint filed 10/24/22,
2. First Amended Complaint filed 1/23/23,
3. Defendants' Answer to First Amended Complaint, Affirmative Defenses, and Jury Demand,
4. Individual Defendants' Answer to First Amended Complaint,
5. Defendants Wellpath, LLC, Ashli Carrafa, LPN, and Nancy Wolf, NP's Answer to First Amended Complaint,
6. Beacham 0004-0211 Regional West Medical Center Admission,

*Beacham v Wellpath, et al.*

7. Department of Corrections Records IND-DOC 1-213,
8. RWMC Outside Documentation Exhibit 3 & 4,
9. PCSO Booking History,
10. Billings Clinic Medical Records,
11. JJB-Chart 1-114, 12/29/18 – 4/2/21 Wellpath,
12. Wellpath Electronic Patient Record (46 pp),
13. Wellpath Electronic Records (28 pp),
14. Plaintiff's Response to Wellpath Defendants' First Interrogatories,
15. Inmate Orientation,
16. Wellpath Polices,
    a. Non-Emergency Care,
    b. Communications on Patients Health Needs,
    c. Medical Autonomy,
    d. Grievance Process Health Care Complaints,
    e. Emergency Response,
    f. Hospitals and Specialty Care,
    g. Initial Health Screening,
    h. Nursing Assessment Protocols,
17. Inmate Rules and Regulations,
18. PCSO Policy on Medical Services,
19. PCSO Policy on Emergency Medical Treatment,
20. Wellpath Inmate Medical Grievance Form – Blank,
21. Miscellaneous Request Forms,
22. Deposition Transcript of Dr. Jason LaTowsky,
23. Agreement for Inmate Health Care Services at Park County, Wyoming,
24. Initial Expert Report of Sean T. Stewart,
25. Deposition Transcript of Joshua Beacham,
26. National Commission on Correctional Health Care (NCCHC) – Standards for Health Services in Jails (2018 Edition)

## III. SUMMARY OF DOCUMENT REVIEW

| Time | Provider/Service | Comments |
|---|---|---|
| | | **November 27, 2019 – January 15, 2020** |
| | | **Incarcerated at PCSO** |
| | | **Tuesday, December 3, 2019** |
| | Non-Emergency Medical Request Form **Depo Exh. 7.94** | "Hernia is not able to be pushed back in" First noticed 3 months ago from over lifting. Response by A. Carrafa, LPN: Inguinal hernia left groin/testicle. Not able to be pushed in.  Gloria notified and ordered evaluation in ER. |
| @ 1642 | Cody Regional Health ER Note Stephanie Knodel, MD **Depo Exh. 7.134** | 41-year-old male who had a hernia mesh repair for incarcerated inguinal hernia back in 2013 (Op note says it was on his right side, patient says he remembers it being on his left always), coming in to custody of Park County Sheriff's office for evaluation of pain in his left inguinal area and testicle. Patient |

*Beacham v Wellpath, et al.*

| | | |
|---|---|---|
| | | reports that for the last 6 months, he started noticing intermittent swelling, feeling like his intestines are going into his left testicle. No nausea/ vomiting, last bowel movement was yesterday. No redness/warmth or fevers/chills. He says it frequently goes in and out, but says it was not reducing this evening and requested evaluation. 41yoM brought in while in custody of Sheriff's department for evaluation of left inguinal hernia that has been intermittently causing him problems for the last 6 months. Says it was worse tonight. No trauma to the area. Hernia was easily reducible on my exam, but then quickly came back out, feels like he has large defect at the site, making it less likely to cause incarceration (of the hernia, at least). US of the testicles with peristalsing bowel, otherwise no acute abnormalities, labs/UA unremarkable. Patient is medically stable to return to care of Park County Sheriff and f/ u with surgery outpatient. |
|  | **Sunday, December 8, 2019** |
| | Miscellaneous Request Form **Depo Exh. 7.93** | "Hernia surgery scheduled" **Response 12/9/19 by RN:** Needs to wait to have surgery until released unless it is an emergency and then needs to be able to pay upfront.  Will let patient know.  Deemed medically stable by ER doc who instructed to follow up with surgeon when able. |
|  | **January 15, 2020** |
|  | **Released from PCSO** |

| |
|---|
| **February 3, 2020 – March 5, 2020** |
| **Incarcerated at PCSO** |
| **March 5, 2020** |
| **Released from PCSO** |

| | | |
|---|---|---|
|  | **Sunday, May 10, 2020 - Friday, April 2, 2021** |
|  | **Incarcerated at PCSO** |
|  | **Sunday, May 10, 2020** |
| | Arrived at PCSO | |
| @ 2359 | COVID Screening **Depo Exh. 7.12** | Temp 96.2.  He denied any close contact with anyone with COVID, or age 65 or more with chronic health conditions. |
|  | **Monday, May 11, 2020** |
| @ 1216 | Medical Questionnaire **Depo Exh. 7.7** | Mr. Beacham was screened by the detention officer.  It was noted that the patient did not have pain, bleeding, or other symptoms suggesting the need for medical service. There were no visible signs of trauma or illness requiring immediate medical care.  He was not treated for injuries prior to |

*Beacham v Wellpath, et al.*

| | | |
|---|---|---|
| | | incarceration. No obvious fever, swollen glands, jaundice, or other infections were noted. He reported a history of alcohol abuse. BA was noted at .146. Patient using Tramadol for hand injury. He denied any current medical problems being treated or requiring treatment. |
|  | **Wednesday, May 13, 2020** | |
| @ 1610 | Receiving Screening B. Hunter, LPN **Depo Exh. 7.27-35** | BP 116/86, P 76, R 18, T 97.8, SPO2 97%, height 5'8", weight 133.6 pounds. His appearance was unremarkable. He reported a concussion about 15 years ago which resulted in a coma for 17 days. He also reported a medical history of adenocarcinoma diagnosed about 3 months ago. He denied any symptoms of TB. He reported using beer rarely and last use the day prior with no prior issues with withdrawal. He reported smoking daily since age 20. He reported a history of PTSD and prior use of Celexa, but not currently. There were no suicide risk concerns noted. He was provided information on how to access health care. He was placed into 14-day quarantine. |
| @ 1610 | Intake Screening Progress Note B. Hunter, LPN **Depo Exh. 7.16** | Patient seen by nurse for intake screening. Patient denied any medical problems or taking any medications. Patient reported he was diagnosed with adenocarcinoma in the intestine approximately 3 months ago. ROI paperwork filled out and faxed. Patient reported he is supposed to see the doctor again in July. Patient's vital signs BP 116/86, P 76, R 18, T 97.7, SPO2 97%. Patient on 14-day COVID-19 quarantine. |
|  | **Thursday, May 14, 2020** | |
| | Fax from Billings Clinic | This is to inform you that we have no record(s) of the above named patient for the date(s) or provider notes requested. |
|  | **Saturday, May 23, 2020** | |
| | Miscellaneous Request Form | I don't have enough teeth to eat the hard vegetables and apples. **Response: 5/24/20:** approved, A. Carrafa, LPN |
|  | **Wednesday, December 16, 2020** | |
| @ 0700 | Non-Emergency Medical Request **Depo Exh. 7.88** | Nature of Problem: I believe my hernia has returned. I have a large bulge again. I felt a major burn a few days ago while taking a poop. The problem was caused by constipation. I want these problems documented and the info given to my lawyer. |
| | Joshua Beacham Deposition | Mr. Beacham testified (**page 34-35**) that he had the hernia before he went into the Park County Detention Center, and it did not result from anything he did or didn't do at the Park County Detention Center. It was the result of heavy lifting. |
|  | **Friday, December 18, 2020** | |
| | GI/Abd Nursing Documentation Tool A. Carrafa, LPN **Depo Exh. 7.85** | Mr. Beacham reported sudden onset of pain and constipation since 12/10/2020. He reported prior hernia repairs x 2. BP 144/95, P 82, R 18, T 98.0, SPO2 95%. He was noted to be alert, with normal skin color and normal gait. On palpation she noted an inguinal hernia in the lower left, tender to palpation. Bowel sounds were present and active. |

*Beacham v Wellpath, et al.*

|  |  |  |
|---|---|---|
|  | Non-Emergency Medical Request **Depo Exh. 7.88** | Response to medical request: Inguinal hernia noted. Hernia belt provided.  Start Colace daily. |
| @ 1500 | Medication Order Nancy Wolf, NP **Depo Exh. 7.4** | Colace 100 mg QD x 90 days |
| **Thursday, December 31, 2020** | | |
| @ 1510 | Medical History & Physical Assessment with Mental Health N. Wolf, DNP **Depo Exh. 7.19-21** | Patient reported a large hernia, hypertension, and dental problems. BP 146/117 & 127/92, P 80 & 66, R 18, T 98.0, SPO2 87%.  Physical Exam WNL except for teeth in poor condition and large left inguinal hernia extending into scrotum.  "tennis ball" sized, tender.  The patient denied ever making a suicide attempt or recently considering suicide.  He was neat and clean with no visual or auditory hallucinations.  There were no mental health problems noted.  He reported substance abuse treatment for marijuana and alcohol 8 months ago.  He reported a history of PTSD due to being abducted and beat for 2 days in 2008. |
|  | Progress Note Nancy Wolf, NP **Depo Exh. 7.15** | Large non-reducible, tender inguinal hernia causing increasing difficulty with urination and passing stool with increased pain. Needs repair before strangulation. |
|  | Problem List **Depo Exh. 7.3** | Left Inguinal Hernia |
| @ 1600 | Medication Order Nancy Wolf, NP **Depo Exh. 7.4** | Prazosin 1 mg QPM x 90 days |
| **Monday, January 11, 2021** | | |
|  | Miscellaneous Request Form **BEACHAM 3** | **From Mr. Beacham:**  I need to talk to the nurse in regard to make an appointment for my hernia! I am having a very difficult time going to bathroom. **Response by A Carrafa, LPN**: We will need record of your last surgery to be able to refer you out.  Then we can set up an appointment to see a general surgeon to evaluate for surgery. All the general surgeons are private practice, due to you not having insurance they may require payment up front or some sort of financial arrangement before they see you. |
| **Wednesday, January 13, 2021** | | |
|  | Miscellaneous Request Form **BEACHAM 1** | **From Mr. Beacham:**  I have been trying to get an appointment to get a very serious hernia taken care of.  My quality of life has deteriorated considerably.  I have been on a laxative for four weeks just to poop and the hernia is now pinching off my ability to pee also.  The hernia has grown to the point it is as big as one of my fists and like I said does not allow me to poop, pee or sleep correctly.  If this hernia ruptures or strangulates, I could lose a testicle, become incontinent and have to carry a colostomy bag.  Or at the worst, the infection could kill me!!! The jail also obviously does not have the ability to care for me after surgery.  I will need help standing and sitting and going to |

*Beacham v Wellpath, et al.*

| | | |
|---|---|---|
| | | the bathroom for weeks. Plus, all I have gotten for pain so far is 2 Ibuprofen a day. This goes from groin to groin. If I am given bond to have this done, I will be staying with my uncle in Lovell or my parents in Oklahoma City, both are drug and alcohol free. I am willing to wear a bracelet that monitors my drinking and location. |
| | Miscellaneous Request Form **BEACHAM 2** | **From Mr. Beacham**: Dr. Etler will give me an appointment if you fax his office my physical you did. **Response by A. Carrafa, LPN**: I still need the record from your last surgery before I can submit a request to send you off-site. |
| | **Thursday, January 14, 2021** | |
| | Health Service Request **Depo Exh. 7.81** | **From Mr. Beacham**: All the doctor needs is a referral/a phone call from you. **Response**: Like I told you previously, we need the records prior to a referral. It appears that this is the same hernia you had before, your dates don't match, and you will not provide us with records. This is not an urgent matter. If the problem becomes worse, such as incarceration/strangulation we will evaluate at that time and go from there. |
| | **Friday, January 15, 2021** | |
| | Progress Note A. Carrafa, LPN **Depo Exh. 7.15** | COVID Vaccine – first dose administered by Public Health Nurse |
| | **Saturday, January 16, 2021** | |
| | Progress Note A. Carrafa, LPN **Depo Exh. 7.15** | **Surgical Request**: Patient put in request for a surgical consult for hernia repair. Patient claimed to have had a hernia repair in January 2020. He was in custody from 11/29/19 – 1/15/20, then again in custody from 2/3/20 – 3/5/20. The hernia is not strangulated or incarcerated. Stated repair was in Kansas City, but he does not remember where. Suspected patient didn't have repair. Was informed he will need to provide records before a referral is made and to let medical know if condition worsens. |
| | **Monday, January 25, 2021** | |
| @ 1500 | Health Request **Depo Exh. 7.77** | "Can I please get a copy of my physical" **Response by A. Carrafa, LPN**: 3 pages provided. |
| | **Thursday, February 18, 2021** | |
| | Transfer Form A. Carrafa, LPN **Depo Exh. 2.166** | Patient currently being treated for Mental Health and Inguinal Hernia with no current complications. Current meds: Prazosin 1 mg QPM and Colace 100 mg QPM |
| | **Sunday, March 7, 2021** | |
| @ 0949 | Vitals **Depo Exh. 8.3** | BP 137/97 |
| | **Sunday, March 21, 2021** | |
| @ 0956 | Vitals **Depo Exh. 8.3** | BP 111/70, P 114, R 14 |

*Beacham v Wellpath, et al.*

| | | **Monday, March 22, 2021** |
|---|---|---|
| @ 1512 | Medication Order Nancy Wolf, NP **Depo Exh. 8.19** | Colace 100 mg QPM x 90 days |
| | | **Sunday, March 28, 2021** |
| @ 1005 | Vitals **Depo Exh. 8.3** | BP 118/72, P 81, R 12, Weight 150 pounds |
| | | **Friday, April 2, 2021** |
| | | **Released from PCSO and Transferred to Wyoming Department of Corrections** |

| | | **Friday, April 2, 2021** |
|---|---|---|
| | | **Booked into Wyoming Department of Corrections** |
| | | **Friday, April 2, 2021** |
| | Intake Assessment Wyoming DOC **Depo Exh. 2.127** | A: Intake assessment done O: BP 130/60, P 104, R 16, T 97.3, Weight 150 pounds, SPO2 95%. P: Prazosin 1 mg QAM Appointments scheduled: Dental, Health Assessment, Quarantine Vitals. |
| | | **Sunday, April 11, 2021** |
| @ 0633 | Sick Call Bethany Schultz, LPN **Depo Exh. 2.126** | S: Have not had a bowel movement since 4/8/21. I have a severe hernia. Was wondering if I could get a laxative. O: BP 115/70, P 99, R 18, T 96.5, SPO2 98%. Inmate seen at his cell door r/t being on quarantine. Inmate stated that he had not had a BM since 4/8/21 and had a large inguinal hernia and does not want to strain to have a BM. BS assessed and are hypoactive, stomach distended and hard. It is observed that inmate does have a large bulge to the left groin area. Inmate stated he was getting a stool softener in county. He stated he did eat breakfast at approximately 0530 this AM and does drink at least 4-5 cups of water a day along with juice and tea. P: Milk of Mag daily x 3 days. |
| | | **Thursday, April 15, 2021** |
| @ 0931 | Provider Note Brenda Vance, PA **IND-DOC 99-100** | S: His primary concern is a large, left sided hernia. This started when he was in county jail. Noticed a small bulge after a BM. A few weeks later he choked on food. "I could feel my intestine through a tear, and you could see it." Stated the hernia is so large that it is "pushing everything to the right". Even urination and bowel movements are now difficult. Stated he was scheduled for surgery. "They said something like a sling was going to be used." Has mesh hernia repair on right. In 2000, he was bull riding when hooked in the face. Multiple reconstructive facial surgeries. Stated that a few years later he was held hostage by two men who tortured him with a bat. Broke the left eye socket. Now has PTSD and feels this is |

*Beacham v Wellpath, et al.*

| | | |
|---|---|---|
| | | currently under control.  For the past year he has had right shoulder pain with any inversion or supination during extension. Denied trauma but did bull ride with his right hand. O: very obvious left sided herniation that is the size of a small orange present from above the groin fold to the inferior scrotum. Firm in nature and in no way is this reducible.  Tender to the inferior aspect with palpation.  Penis is to the right of mid-line and remains there even with gentle pressure to the left.  Unable to palpate right testicle. A: unilateral inguinal hernia, with obstruction, without gangrene P: bottom bunk, consultation to off-site clinic for ultrasound, priority urgent. |
| | | **Sunday, April 18, 2021** |
| | HSR – Corizon DOC **IND-DOC 70** | "I am having a hard time going poop and pee because of my hernia." |
| | | **Monday, April 19, 2021** |
| @ 0942 | Sick Call K. Loomis, LPN **Depo Exh. 2.124** | S: Having a hard time pooping and peeing because of hernia. P: Milk of Mag daily x 3 days. |
| | | **Friday, May 7, 2021** |
| | Office Notes Jason LaTownsky, MD **Depo Exh. 1.102** | The patient is a welder who is quite physically active and lifting. The patient is currently incarcerated and over the last 7 months, has had a slowly increasing bulge in his left groin. The patient has a history of a TAPP right inguinal hernia repair, which has remained intact. I did discuss doing a laparoscopic repair of his left inguinal hernia but with a large inguinal-scrotal hernia, I feel that he would be best served with an open repair with mesh. Risks of chronic pain and other complications were discussed with the patient, and he agrees to proceed with an open operation and re-approximation of the underlying musculature. |
| | Jason LaTowsky, MD – Deposition | Dr. LaTowsky testified (**pages 12-13**) that when he saw Mr. Beacham his hernia was not an emergency; it was not strangulated.  He testified that these types of hernias are seldom emergent as the defect is big enough that the bowel can herniate in but easily reduce itself. |
| | | **Wednesday, May 12, 2021** |
| @ 0100 | | "I choked last night and coughed really hard.  I am pretty sure I tore my hernia more because I have a burning sensation and it is even harder to urinate now!! |
| | Health Service Request – Corizon DOC B. Schultz, LPN **IND-DOC 68** | S: Increase in difficulty urinating.   Had a surgical consult already.  Choked on coffee on Monday night and has to push hernia over to urinate.  Pain 6/10 (now) 10/10 (worst).  Nothing helps, pain not any worse, burning/aching constant, no physical exam due to privacy. O: BP 115/78, P 78, T 98.2, SPO2 97%, weight 153 pounds Plan: Ibuprofen 400 mg TID x 3 days, monitor for increased pain or unable to urinate at all to let medical know right away. |

*Beacham v Wellpath, et al.*

| | | |
|---|---|---|
| **Friday, May 14, 2021** | | |
| @ 1947 | Consultation Request Brenda Vance, PA | Seen in A-2 following an off-site surgical consultation with Dr. LaTowsky at Regional West Physician Clinic on 5/7/21. He is aware of their recommendation for open repair of his left inguinal hernia. He had no concerns/questions about this. He did not request the availability of MOM on a daily basis. Stool softeners are easier to pass and cause less pain in the hernia area. |
| **Tuesday, June 1, 2021** | | |
| | Surgery Notes **Depo Exh. 1.09** | Hernia Surgery – Open reduction and repair of left inguinal hernia with mesh. |
| | Jason LaTowsky, MD – Deposition | Dr. LaTowsky testified (**page 39**) that during the surgery and upon re-evaluation on 6/22/21 Mr. Beacham had both testicles. |
| **Tuesday, June 22, 2021** | | |
| | Office Notes **Depo Exh. 1.99-100** | The patient is a 43-year-old male who Dr. LaTowsky on 06/01/2021 did an open reduction and repair of a large left inguinal hernia with mesh. Patient states preoperatively he had a very large hernia that was large enough that they decided not to do it laparoscopically, but rather open. He states that since that time he has done pretty well but continues to have pretty frank tenderness in the left groin. He also feels like there is a cord going down into his testicle. He has no obstruction though and feels like the hernia is much, much better than before. <br><br> The patient is 3 weeks postop from his inguinal hernia repair. Postoperatively he is doing very well. There is no recurrent hernia. He does have an expected seroma that is going down in the testicle which almost always happens after these repairs of large inguinal hernias. He does seem to have some postoperative neuropathy. I am going to put him on 7 days of scheduled ibuprofen, 600 mg 3 times a day and then gabapentin 300 mg 3 times a day for the next 30 days with twice a day warm compress to help with absorption of that fluid. He can come back and see Dr. LaTowsky or myself in 4 weeks' time to make sure he is doing better. |

*Beacham v Wellpath, et al.*

## IV.    DISCUSSION AND OPINIONS

Based on my review of the documents provided to date, my education, training, 38 years of experience in correctional healthcare, and the facts cited above and below, it is my opinion that the care provided to Mr. Joshua Beacham by Wellpath nursing personnel while incarcerated in the Park County Jail met reasonable and acceptable practices based on all the circumstances presented to them at the time of the care provided, and they were not indifferent to his medical needs.

The Park County Jail operates a detention facility that holds an average of 106 inmates per day. The facility has nursing staff assigned to the jail on a part time basis sixty (60) hours per week. The contract with Wellpath to provide healthcare services also provides 24-hour access to a medical provider for nursing or correctional staff to call for direction when not on site and once a week visit to the facility.   Considering the small size of the facility this level of part time healthcare staffing is appropriate and standard practice for many small jails and/or detention centers throughout the country.   In 2019 (last date information available) there were 2,850 local jail facilities in the nation.   Nearly 73% of all jail jurisdictions hold fewer than 250 inmates (**U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, Jail Inmates in 2019**).   The standards in place for providing health services in jails are intended for jails of any size and consider that many small facilities must rely on correctional officers for monitoring of inmates when healthcare professionals are not physically on site.

The Park County Jail is not accredited by the **National Commission on Correctional Health Care (NCCHC)**, whose standards are voluntary.   However, Wellpath policies and procedures adhere to these standards.   I have cited these standards below where appropriate.

**The National Commission on Correctional Health Care (NCCHC), Standards for Health Services in Jails, Section J-A-01 – "Access to Care"** states that inmates have access to care to meet their serious medical, dental, and mental health needs.

**Park County Jail Policy on Medical Care** states that inmates have the right to access to reasonable medical care at their expense.

There were no barriers to accessing healthcare during Mr. Beacham's incarceration at the Park County Jail created by any Wellpath employee, policy, or practice.   He was seen by the nurse for his screening shortly after admission and provided with information on how to access healthcare while in the facility.   This standard was met.

**The National Commission on Correctional Health Care (NCCHC), Standards for Health Services in Jails, Section J-E-02 – "Receiving Screening"** states that receiving screening be performed on all inmates on arrival at the intake facility to ensure that emergent and urgent health needs are met.   This standard is intended to fulfill four purposes; 1) to identify and meet any urgent health needs of those admitted, 2) to identify and meet any known or easily identifiable health needs that require medical intervention before the health assessment, 3) to identify and isolate any inmates who appear potentially contagious, and (4) to appropriately obtain a medical clearance when necessary.

*Beacham v Wellpath, et al.*

Mr. Beacham was medically screened shortly after admission to the jail by a correctional officer and denied any current medical problems that required treatment. He was evaluated again by nursing personnel 2 days later and was noted to have vital signs within the normal range and a normal appearance. He did report a history of adenocarcinoma that had been diagnosed 3 months earlier, but after checking with Mr. Beacham's healthcare provider there was no indication that this complaint was valid. Mr. Beacham was also screened for any COVID symptoms or potential exposure to anyone with COVID prior to his admission to the jail. He was placed into COVID quarantine due to the heightened need for social distancing during this time in the wake of the pandemic. The receiving screening and follow up response were appropriate and well within the standard of care. This standard was met.

**The National Commission on Correctional Health Care (NCCHC), Standards for Health Services in Jails, Section J-D-08 – "Hospital and Specialty Care"** states that hospitalization and specialty care are available to patients who need these services.

The **Wellpath (Park County) Policy and Procedure #HCD-100_D-08 "Hospital and Specialty Care"** states that patients who require hospital or specialized ambulatory care are provided appropriate and timely access to such care that meets state licensure requirements.

Mr. Beacham arrived at the facility on **May 10, 2020**, with a previously diagnosed reducible inguinal hernia. He also reported a diagnosis of adenocarcinoma that was diagnosed 3 months earlier. The nurse appropriately obtained a release of information for Mr. Beacham's treating provider, but no records were found to support this complaint.

In **December 2020**, Mr. Beacham complained that his hernia had returned and was causing problems with constipation. He was seen by the nurse who evaluated the hernia and noted that bowel sounds were present. LPN Carrafa appropriately contacted the provider who ordered a stool softener and a hernia belt for his comfort. He was examined by the provider later in December who noted that his hernia extended into his scrotum but was not strangulated (A strangulated hernia occurs when the blood supply to the herniated tissue has been cut off. This strangulated tissue can release toxins and infection into the bloodstream, which could lead to sepsis or death. Strangulated hernias are medical emergencies). As Dr. Jason LaTownsky testified in deposition (**page 12-13**) these types of hernias are seldom emergent as the defect is big enough that the bowel can herniate in but easily reduces itself.

Mr. Beacham had previously been incarcerated in **December 2019** and had complained then that his hernia was not reducible. He was sent to the emergency room for evaluation by a physician who determined that the large defect at the hernia was unlikely to cause incarceration and he could wait to have it repaired when he was able. This surgical intervention was elective and could be scheduled by the patient upon release from custody. Mr. Beacham was out of custody between **January 15, 2020, to February 4, 2020**, and again from **March 5, 2020, to May 10, 2020**, and did not seek surgical intervention during those periods.

The **Agreement between Park County, Wyoming and Wellpath** states that Wellpath (f/k/a CHM) shall not be responsible for the provision or cost of any elective care.

*Beacham v Wellpath, et al.*

**Park County Jail Policy on Medical Care** states that "if while incarcerated, you attend any out-of-facility medical appointments, have a hospital stay, require transport by ambulance, or an emergency room visit, etc. you will be responsible for all payments related to these services. You will be billed by the providing agencies for these services.

**Park County Jail Policy on Medical Care** states that inmates that require continued medical care or prescription medications will be required to complete a release of medical information at the time of their booking to enable the Detention Center Medical Authority to contact their Primary Health Care Provider. Failure to complete the necessary medical release form may cause a disruption in the provision of needed medication and medical care.

Mr. Beacham asked multiple times for Wellpath healthcare staff to schedule his elective hernia surgery during **January 2021** and was advised by staff that he needed to provide information about his prior surgery in order for the health authority to contact his primary care provider for information. LPN Carrafa clearly instructed Mr. Beacham regarding this policy and also educated him on how to contact healthcare if his condition worsened. Mr. Beacham never reported to healthcare staff that he needed urgent and/or emergent care for his long-standing hernia issue.

LPN Carrafa also completed a Transfer Summary form to accompany Mr. Beacham to the Wyoming Department of Corrections upon his release from the Park County Jail alerting them to his mental health needs and inguinal hernia without complications. This was well within the standard of care.

Mr. Beacham was transferred from Park County Jail to the Wyoming Department of Corrections on **Friday, April 2, 2021**. He was evaluated for his hernia 2 weeks later and referred to see a general surgeon on **May 7, 2021**. Dr. Jason LaTowsky evaluated Mr. Beacham's hernia in his office on **Friday, May 7, 2021**, and determined that although his hernia was not an emergency and/or strangulated, he would schedule his elective surgery for the following month. Mr. Beacham's surgery was completed on **Tuesday, June 1, 2021**, with routine follow-up 3 weeks later. It was noted at that time that he was doing very well with no complications.

Although Mr. Beacham claims in his First Amended Complaint that he lost a testicle due to the delay in treatment, there is no documentation by any treating physician that this is the case. Dr. Jason LaTowsky, Mr. Beacham's general surgeon testified in deposition (**page 39**) that during the surgery and upon re-evaluation on 6/22/21 Mr. Beacham had both testicles. Even Mr. Beacham testified in deposition (**page 30-31**) that no healthcare provider has told him that he was missing a testicle, but a physician at the Honor Farm told him he thought his testicle had ascended.

Based on my education and experience in the correctional health care setting, and review of the records provided, it is my opinion that the care provided to Mr. Joshua Beacham by Wellpath nursing personnel while incarcerated in the Park County Jail met reasonable and acceptable practices based on all the circumstances presented to them at the time of the care provided, and they were not indifferent to his serious medical needs.

*Beacham v Wellpath, et al.*

My opinions in this case are based on many years of education and experience in the correctional health field, and upon the documentation provided to me for review.  I reserve the right to supplement this opinion in the event additional documentation is provided in this matter.  My opinions herein are expressed within a reasonable degree of nursing certainty.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 28, 2023, in Mesquite, Nevada.

_____

Kathryn J. Wild, RN, MPA, CCHP-RN

# EXHIBIT D

**Kathryn J. Wild, R.N., M.P.A., C.C.H.P.-R.N.**
1148 Dreamcatcher Bluff, Mesquite, NV 89034
(909) 720-0961
kwild@usa.net (e-mail)
www.correctionalhealthconsultant.com

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| Kathryn J. Wild, Reno, NV<br>*Consultant* | 1993 – Present |
| Orange County Health Care Agency<br>Correctional Health Services, Santa Ana, CA<br>*Deputy Agency Director* | 2010 – 2013 |
| San Bernardino County Sheriff's Department, San Bernardino, CA<br>*Health Services Administrator* | 1995 – 2010 |
| Orange County Health Care Agency<br>Correctional Medical Services, Santa Ana, CA<br>*Senior Comprehensive Care Nurse* | 1985 – 1993 |
| Saint Joseph Hospital, Orange, CA<br>*LVN/Registered Nurse – Medical Surgical Unit* | 1980 – 1985 |

## EDUCATION

**Fellow** – California Healthcare Foundation (CHCF) Leadership Fellowship – 2007/2009
**Masters in Public Administration** – National University, San Diego, CA (2005)
**Management Leadership Academy (MLA),** San Bernardino County (1998)
**Bachelor of Science – Health Services Management,** University of La Verne, La Verne, CA (1998)
**Associates Degree in Nursing** – Rancho Santiago College, Santa Ana (1984)

## PROFESSIONAL CERTIFICATIONS, AWARDS AND COMMITTEES

➢ Co-Chair – Medical/Mental Health Workgroup Adult Titles 15 Regulation Revision (Minimum Jail Standards), California Board of State and Community Corrections (January 2016)
➢ California Healthcare Foundation (CHCF) – Health Care Leadership Program, Cohort VII – 2007/2009 Fellowship
➢ 2008 Woman of Distinction – Assemblyman Bill Emerson's 4th Annual 63rd District's - Women of Distinction Awards
➢ 2007 Distinguished Service Award – American Correctional Health Services Association (ACHSA)
➢ Certified Correctional Healthcare Professional (CCHP) since 1991
➢ Certified Correctional Healthcare Professional – RN (CCHP-RN) since 2014
➢ Institute for Medical Quality (IMQ) – Correctional Accreditation Surveyor
➢ Outstanding Mental Health Advocate Award – The California Coalition for Mental Health - 2003

Revised: January 1, 2023

**Kathryn J. Wild, R.N., M.P.A., C.C.H.P.-R.N.**

---

### PROFESSIONAL AFFILIATIONS

➢ American Correctional Health Services Association (ACHSA) – Director 2002 - 2004
➢ California/Nevada Chapter ACHSA – Past President 2003/2004
➢ Forensic Mental Health Association (FMHA)
➢ American Correctional Association (ACA)
➢ American Jail Association (AJA)
➢ National Commission on Correctional Health Care (NCCHC)
➢ Academy of Correctional Health Professionals
➢ Visiting Nurse Association of Inland Counties (VNAIC) – Director 1999 – 2003
➢ American Correctional Nurses Association (ACNA)

---

### PRESENTATIONS

September 2017   *"Clinical Management for High Risk Patients in this Litigious Setting"*
- California/Nevada Chapter of ACHSA – San Jose, CA

January 2015   *"Correctional Health Care News Round Up"*
- Correctional Nurse.net - Podcast

October 2013   *"Managing Nursing Sick Call to Reduce Risk"*
- National Commission on Correctional Health Care – Nashville, TN

April 2013   *"10 Ways Correctional Nurses Can End Up in Court"*
- National Commission on Correctional Health Care – Denver, CO

April 2013   *"Managing Nursing Sick Call to Reduce Risk"*
- Correctional Health Care Webinar – OmniSure Consulting Group

October 2012   *"How to Create and Implement Safe and Effective Nursing Protocols"*
- National Commission on Correctional Health Care – Las Vegas

March 2009   *"Nursing Forum – Administrative Issues"*
- American Correctional Health Services Association – Orlando, FL

April 2008   *"Medical Issues – Custody and Medical: Working Together"*
- American Jail Association – Denver, CO

May 2007   *"Forming a Partnership – Mental Health Courts"*
- American Jail Association – Nashville, TN

April 2005   *"Case Management in a Large County Jail"*
- National Commission on Correctional Health Care – Las Vegas

November 2003   *"Contemporary Health Care Issues in Corrections"*
- California State Sheriff's Association – Sacramento, CA

2

Revised: January 1, 2023

**Kathryn J. Wild, R.N., M.P.A., C.C.H.P.-R.N.**

---

### PUBLICATIONS/PUBLICATION REVIEW

Enchanted Mountain Press Publications – Textbook Chapter Review: **"Correctional Healthcare Patient Safety Handbook: Reduce Clinical Error, Manage Risk, and Improve Quality"**, "Recipient of Care", December 2013

Smith, Sue and Wild, Kathy. **"Best Practices in Nursing Sick Call Management (Part 2)"** CorrectCare, The Magazine of the National Commission on Correctional Health Care. Fall 2013: 12-13, 25.

Smith, Sue and Wild, Kathy. **"Understanding Legal Risk with Sick Call Administration."** A Risk Management Bulletin: Omnisure Risk Management Consulting. Fall 2013

Smith, Sue and Wild, Kathy. **"Best Practices in Nursing Sick Call Management (Part 1)"** CorrectCare, The Magazine of the National Commission on Correctional Health Care. Summer 2013: 12-14.

Hurst, Norm and Wild, Kathy. **"Forming a Partnership for Successful Mental Health Courts."** American Jails. November/December 2007: 23-27.

Hurst, Norm and Wild, Kathy. "**Working Together: Health and Security Side by Side**." The State of Corrections: ACA Annual Conference Proceedings. 2006: 189 – 195.

Revised: January 1, 2023

# EXHIBIT E

# Kathryn J. Wild, RN, MPA, CCHP-RN
## Legal Cases – Depositions/Trials
### 2019 - 2023

Trials:

1. July 2022 **Austin Bond, as Special Administrator for the Estate of Mitchell Lee Godsey, deceased v Vic Regalado and Armor Correctional Health Services, Inc.,** U.S. District Court for the Northern District of Oklahoma, Case # 18-CV-231-OKF-CDL – Attorney Sean Snider - Defense

2. May 2022 **Bilal Hasanie Hill v Phelps County Sheriff's Department; Phelps County Jail; Sheriff Richard L. Lisenbe, Dr. Arthur Bentley, Dionne Kelley; Kelly Ratcliff, Sergeant Glenn; Lieutenant Joe Taylor; Advanced Correctional Healthcare, et al.,** U.S. District Court for the Eastern District of Missouri Eastern Division, Case # 4:20-cv-00804-JMB – Attorney Tad Eckenrode - Defense

3. December 2019 **Patrick Hahn and Erik Redwood, Administrator of the Estate of Janet Louise Hahn, Deceased, v Health Professionals, LTD,** Circuit Court of the Sixth Judicial Circuit Champaign County, Illinois, Case # 2015-L-184 – Attorney Keith Fruehling - Defense

4. February 2019 **Conmed LLC f/k/a CONMED Inc. v Pierce County**, Superior Court of the State of Washington in and for the County of Pierce, Case # 17-2-06200-1 – Attorney Craig McIver - Plaintiff

Depositions:

1. June 2013 **Gaven Picciano v Clark County, et al.** U.S. District Court Western District of Washington at Tacoma, # 3:20-cv-06106-DGE – Mason Ji - Defense

2. February 2023 **Georgia Eugenia Thomas v Southern Health Partners, INC,** U.S. District Court Eastern District of Kentucky Northern Division at Covington, # 2:21-cv-00012-WOB-CJS – Bradley Fyffe - Defense

3. January 2023 **Michelle L. Puki, as Personal Representative of the Estate of Lori Langton v Okanogan County, et al**, U.S. District Court Eastern District of Washington at Spokane, # 2:20-cv-00411-SMJ - Alexander Dietz - Plaintiff

4. August 2022 **Dustin Michelle, an individual, v South Correctional Entity ("Score"), Naphcare Inc.** United States District Court Western District of Washington at Seattle, Case # 2:21-CV-00140-JHC – Jonathon Ballard - Defense

5. June 2022 **Jeffery Heth v LaSalle County, Correct Care Solutions, et al.** U.S. District Court Northern District of Illinois Eastern Division, Case # 19 CV 1096 – Attorney Ron Neroda - Defense

6. September 2021 **Tom Montgomery as Personal Representative of the Estate of Michael Travis Clinard, deceased v King County, et al.** Case # 2:20-cv-00855-RAJ, United States District Court for the Western District of Washington – Attorney Ryan Dreveskracht - Plaintiff

Kathryn J. Wild
Legal Cases – Deposition/Trials
2019 - 2023

7. September 2021 **Monique McNeil, as Administratrix of The Estate of Terrance Duncan v Correctional Medical Care, Inc., CBH Medical, P.C., County of Schenectady, et al.** Case # 9:18-CV-894, United States district Court Northern District of New York – Attorney Jonathan Symer - Defense

8. August 2021 **Jessica Lynne Preston v County of Macomb (CCS),** United States District Court for the Eastern District of Michigan, Southern Division, Case # 5:18-cv-12158, Attorney David Mammel - Defense

9. June 2021 **Russell H. Dawson (Damaris Rodriquez, Deceased) v Naphcare, INC., et al.,** United States District Court Western District of Washington at Seattle, Case # 2:19-cv-01987-RSM – Attorney Heidi Mandt - Defense

10. June 2021 **Patricia Thompson, as PR of the Estate of Marconia Lynn Kesee v Norman Regional Hospital, et al.** United States District Court for the Western District of Oklahoma, Case # CIV-19-113-SLP, Attorney Austin Young - Defense

11. May 2021 **Zuniga v County of San Bernardino, et al.,** Superior Court of California for the County of San Bernardino, Case #: CIVDS1620852, - Attorney Jonathon Bond - Defense

12. March 2021 **Donna Malone, et al. (Thomas Gosier) v Wicomico County, et al. (CCS),** US District Court for the District of Maryland, Case # 1:19-cv-02412-SAG – Attorney Daniel Griffith - Defense

13. February 2021 **Maria Clara Rodado, as the personal representative and on behalf of the heirs and estate of George Marinay, deceased, and Norma Marinay v Corizon Health, INC.** Fourth Judicial District Court in and for ADA County, State of Idaho, Case # CV01-17-19343 – Attorney Dylan Eaton - Defense

14. January 2021 **Keith Crumley, by Next Friend Shirley Crumley v Kerry J. Forestal in his official capacity as Sheriff of Marion County, et. al.** U.S. District Court Southern District of Indiana Indianapolis Division, Case # 1:19-cv-04110-TWP-DM – Attorney Drew Farringdon - Defense

15. August 2020 **Alyson Nale v Nurse Finley, Union Parish Detention Center, and Travelers Insurance.** U.S. District Court, Wester District of Louisiana, Monroe Division, Case # 3:19-CV-00473 – Attorney Joe Long - Plaintiff

16. June 2020 **Tammy Shidler and Gary Shidler, individually and as successors in interest to Joshua Pitts, deceased v County of San Bernardino.** U.S. District Court for the Central District of California, Case #5:19-cv-00503-AB (SHKx) – Attorney Christopher P. Wesierski - Defense

17. April 2020 **The Estate of Kyra Warner v Wellpath, f/k/a Correct Care Solutions, et al.** US District Court Southern District of Indiana, Indianapolis Division, Case # 1:19:cv-00774-RLY-MJD – Attorney Carol Dillon - Defense

Kathryn J. Wild
Legal Cases – Deposition/Trials
2019 - 2023

18. December 2019      **Donzell Lowe, Plaintiff v Tarry Williams (Wexford), et.al.** U.S. District Court for the Northern District of Illinois, Case # 1:16-cv-8274 – Attorney Edward Khatskin - Defense

19. September 2019      **Leon Lippett v Corizon Health, Inc. et al.** U.S. District Court Eastern District of Michigan Southern Division, Case # 2:18-cv-11175, Attorney James Farrell - Defense

20. August 2019      **Christina Marziale v Correct Care Solutions,** U.S. District Court Eastern District of Arkansas Western Division, Case #5:18-cv-86DPM, Attorney Katherine Dzik - Defense

21. May 2019      **Brenda Davis, et. Al. v Buchanan County, Missouri, et.al.,** U.S. District Court for the Western District of Missouri Western Division, Case # 17-cv-06058-NKL – Attorney Richard Acosta - Defense

22. May 2019      **John Scalia, individually and as successor-in-interest of Decedent Kimberly Morrissey-Scalia v County of Kern, et al.,** US District Court Eastern District of California, Case # 1:17-CV-01097-LJO-SKO – Attorney Sanjay Schmidt - Plaintiff

23. April 2019      **Mary Gordon, successor-in-interest for decedent, Mathew Shawn Gordon, individually v County of Orange, et al.** in the U.S. District Court Central District of California, Case # SACV13-01050 CJC (DFMx), Attorney Pancy Lin - Defense

24. March 2019      **Pamela Barrier as Guardian of the Person and Property of the Ward, Chad A. Barrier v JFK Medical Center, et al.** In the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida, Circuit Civil Division AH, Case #502012CA0228XXXXMBAN – Attorney Jami Gurksy - Defense

# EXHIBIT F

**Kathryn J. Wild, RN, MPA, CCHP-RN**
**1148 Dreamcatcher Bluff, Mesquite, NV 89034**
**Phone: 909-720-0961**
**kwild@usa.net**

## Fee Schedule 2023

### Professional Services – Kathryn J. Wild, RN, MPA, CCHP-RN

| Service | Fee | |
|---|---|---|
| Retainer – Initial Review of Discovery | $ 4,500.00 | Non-refundable |
| Conference calls, meetings, site visits, report development, document review | $ 450.00 | Per hour |
| Deposition | $ 500.00 | Per hour (Minimum of 2 hours) |
| Trial Daily Rate | $ 3,500.00 | Daily Rate |
| Travel Time | $ 200.00 | Per hour of travel |
| Travel Expenses (airfare, transportation, lodging, meals) | | Actual cost |
| Travel Expenses (mileage) | $.56 per mile | As applicable |
| Incidental Expenses (postage, etc.) | | Actual cost |

Bruce J. Feigelson, M.D., F.A.C.S.
Colorado Permanente Medical Group, P.C.
380 Exempla Circle
Lafayette, CO 80026
303.338.4545

---

FEE SCHEDULE 2023

Professional Services – Bruce J. Feigelson, M.D., F.A.C.S.

| SERVICE | FEE | |
|---|---|---|
| Record Review | $750 | Per Hour |
| Deposition | $750 | Per Hour – 4 Hour Minimum with Seven (7) Day Cancellation Fee |
| Trial Testimony | $6,000 | Per Day |